[No. 17174. Department One. December 11, 1922.]

BRINNON LOGGING COMPANY, *Appellant,* v. CARLSBORG MILL & TIMBER COMPANY, *Respondent.*[1]

DAMAGES (118)—BREACH OF CONTRACT—PROSPECTIVE PROFITS—EVIDENCE. Prospective profits from a contract to log land for the owner, breached through the owner's failure to furnish the logging company with logging equipment, are a matter of conjecture and speculation and not recoverable, where it rests upon the opinion of members of the logging company as to the profits that would have been made, without testimony as to the basis of their estimates.

DAMAGES (23)—MITIGATION. In an action for loss of profits on a contract to log land for the owner, through the owner's breach in failing to furnish logging equipment, it was the duty of the logging company to mitigate the damages by replacing defective equipment, if it could do so without undue expense.

Appeal from an order of the superior court for King county, Hall, J., entered August 11, 1921, granting a new trial, after the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Preston, Thorgrimson & Turner,* for appellant.

*Shank, Belt & Fairbrook,* for respondent.

HOLCOMB, J.—Prior to March 27, 1916, respondent was the owner of timber lands near Brinnon, Washington, and upon the property were certain logging roads, machinery and equipment which had been used

[1]Reported in 210 Pac. 945.

in carrying on logging operations. There remained at that time approximately 30,000,000 feet of timber to be logged off. A contract was entered into on March 27 between respondent and Kelly, Sager and Corlett, by which respondent agreed to turn over for use in the logging operations the logging donkeys and locomotives on the ground, together with certain other equipment, and in addition thereto to furnish some new logging trucks, and certain types of donkeys suitable for yarding and road work in the logging operations. Respondent was also to furnish equipment for making extensions to the existing roads, and provide a log dump. Under the contract, appellant was to do the logging and deliver the logs at the log dump at the end of the logging road, placing the same in booms ready for towing. For this work respondent was to pay appellant certain prices named in the contract per thousand feet, board measure, for the logs delivered at the booming place. It was agreed that Kelly, Sager and Corlett should form a company to be known as the Brinnon Logging Company, to whom the contract should be assigned, which was done. Appellant went into possession of the premises and equipment and started logging operations, but, as it alleges, due to the fact that the logging equipment furnished was not of the character described in the contract, portions of it not being furnished within the times stipulated, and for other breaches stated in the complaint, appellant suffered a loss in carrying on the logging operations, and brought this action to recover the same.

Among the items sought to be recovered were the amounts expended by appellant in extending the logging roads, and in repairing and constructing the same, the increased expense of cutting and delivering the twelve million feet of timber which was cut and delivered, the value of the timber cut and delivered at the

booming ground for which no payment had been made, the expense of repairing defective equipment, and, in addition, the estimated profits on the timber not cut, which was lost because plaintiff was not able to carry out the contract on account of respondent's breaches thereof.

A trial of the case before a jury resulted in a verdict for appellant in the sum of $10,482.28. Respondent moved for judgment notwithstanding the verdict, which was denied, and also for a new trial, which was granted by the court, the order being:

"  . . . . .  Because of error committed by the court in instructing the jury as to the measure of damages for failure to supply appliances according to the contract, and in failing to withdraw from the consideration of the jury the item of loss of prospective profits, claimed by the plaintiff in its complaint, and for such two errors, only, the motion of the defendant for a new trial should be granted."

This appeal is from the above order.

Appellant's three assignments of error are based upon the granting of the above order.

The court refused respondent's request to instruct the jury that, if the equipment required by the contract was not furnished, then the rental value of the equipment not furnished, and the difference between the rental value of the equipment which was furnished and the rental value of such equipment as would have complied with the requirements of the contract, was the proper measure of damages. Instead thereof, the court instructed that if the jury should find that the equipment required by the contract was not furnished, and further, if furnished appellant could have conducted the logging operations at a profit, then the appellant was entitled to recover such profit as the jury might find it would have made. It is for the errors in

refusing to give and giving these instructions that the court granted a new trial.

Respondent's contention is that, so far as any damage because of any failure to furnish machinery of the character required by the contract is concerned, appellant's measure of damages was the actual rental value of such machinery. And respondent further contends that, as to the item of loss of prospective profits claimed by appellant, there was no sufficient evidence to carry the case to the jury.

The gist of the contract was the work of logging off the land belonging to respondent and delivering the logs at a definite place. As a part of the consideration, respondent was to furnish the logging equipment. The logs, after being cut and placed in the water, were the property of respondent, and all that appellant was to receive was a certain price for doing the work.

Appellant contends that, upon the question of the contract here involved, the measure of appellant's loss occasioned by respondent's breach was the increased cost of doing the work actually done, and the loss of profits on that portion of the work left unperformed. Appellant also contends that this was not a case where for a small amount one could supply the necessary equipment, but that instead the logging operations were carried on at a distance from any city, at a place where it would take time and cost a great deal of money to secure the necessary equipment for the logging operations.

Of course, the price to be paid for the work done was fixed by the contract, but that did not necessarily fix the cost for damages for work not done. Appellant's witnesses Kelly and Sager, who were two of the original parties to the contract, and who were still members of the appellant company, testified that they could have made a minimum profit of fifty cents per thousand feet

upon the remaining 14,000,000 feet of timber not logged. They also testified that, if a certain locomotive which was a part of the equipment to be furnished and certain donkey engines that should have tested 180 pounds steam pressure had been furnished they would have been able to log 7,000,000 feet of additional timber while they were logging, with no additional expense, and would have made a profit of fifty cents per thousand feet on the timber left standing.

It must be remembered that the contract here involved was in the nature of a leasing contract of the equipment, and it appears that, when one of the locomotives failed to work as it should have worked, respondent furnished another locomotive which was satisfactory, and rented it to appellant to take the place of the unsatisfactory locomotive, and appellant paid the rental without any protest. It also appears that, during the time of the logging operations, there were machinery houses in Seattle which had direct communication by boat with Brinnon, and which were carrying in stock yarders and loaders that could withstand a steam pressure up to much more than 180 pounds.

We think there was error in the instructions given by the court to the jury as to the recovery of loss of anticipated profits. The sole testimony as to anticipated profits was by two of the interested parties who were witnesses, Kelly and Sager. They estimated that they could have made fifty cents per thousand upon the remaining timber not logged, if the equipment had been as contracted to be. They gave no figures whatever as to the basis of their estimates.

While it is true, as appellant contends, and cites our cases to sustain, that future profits may be recovered as damages upon breaches of contracts, and that they are to some extent uncertain and problematical and cannot be determined with mathematical nicety, they

must, however, be more definite and certain than mere speculation and conjecture.   This is established by the following cases decided by us:  *Skagit Railway & Lum. Co. v. Cole*, 2 Wash. 57, 25 Pac. 1077; *Church v. Wilkeson-Tripp Co.*, 58 Wash. 262, 108 Pac. 596, 109 Pac. 113, 130 Am. St. 1059; *Bogart v. Pitchless Lum. Co.*, 72 Wash. 417, 130 Pac. 490; *Bromley v. Heffernan Engine Works*, 108 Wash. 31, 182 Pac. 929; *Florence Fish Co. v. Everett Packing Co.*, 111 Wash. 1, 188 Pac. 792; *American Iron & W. Works v. Fischer*, 109 Wash. 279, 186 Pac. 877; *Andreopulos v. Peresteredes*, 95 Wash. 282, 163 Pac. 770; *Cuschner v. Pittsburgh-Hickson Co.*, 91 Wash. 371, 157 Pac. 978; *Cannon v. Oregon Moline Plow Co.*, 115 Wash. 273, 197 Pac. 39; *Olson v. Solberg*, 119 Wash. 496, 206 Pac. 10; *Sunset Shingle Co. v. Northwest Elec. & Water Works Co.*, 118 Wash. 416, 203 Pac. 987; *Webster v. Beau*, 77 Wash. 444, 137 Pac. 1013, 51 L. R. A. (N. S.) 81; *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100; *Federal Iron & Brass Bed Co. v. Hock*, 42 Wash. 668, 85 Pac. 418.

Some of the above cases are where anticipated future profits were allowed upon satisfactory proof of the probable amount thereof, and some where they were disallowed.

In *Cuschner v. Pittsburgh-Hickson Co.*, 91 Wash. 371, citing and distinguishing *Sedro Veneer Co. v. Kwapil, supra,* we said:

"In this case the amount of the profits are sought to be established by the opinion or guess of the witnesses. We think no court has gone so far as to hold that prospective profits may be established by the opinion of the witnesses as to the amount thereof."

In *American Iron & W. Works v. Fischer, supra,* we said:

"The testimony as to the loss of profits was so suppositive and postulatory that in law it could not be the

foundation of a verdict. The testimony was indefinite as to the number of beds actually manufactured and delivered, which would leave the number of beds upon which profits were to be figured in the same indefinite condition. Although we are committed to the doctrine that prospective profits are recoverable, they must be proven with reasonable certainty, and the testimony here as to the prospective profits on an indefinite number of beds undelivered was supported by no degree of certainty.''

In *Cuschner v. Pittsburgh-Hickson Co., supra,* which contained an item for the recovery, among other items, of loss of future profits, it was said:

''The appellant and one of his salesmen testified that, if the goods had been received, they could have been sold, and that the profits would have been the amount specified. . . . . . The evidence offered in proof of the amount of damages was nothing more than the opinion of the witness. It amounted practically to a guess. There was no evidence of facts by which the amount of profits was established, or could be inferred.''

It was therefore held that the damages were not proven with reasonable certainty.

The above quotations illustrate the situation in this case. While the two witnesses gave testimony that they could have made fifty cents per thousand feet profit on the timber left standing, they gave no facts upon which that profit could be determined, other than their own mere opinions.

We conclude, therefore, that the evidence was insufficient as to future profits, and that the trial court was right in holding that it had erred in failing to withdraw from the consideration of the jury, upon the evidence as it stood in the trial, the item of loss of prospective profits.

As to the other basis of the court's order granting a new trial, that it erred in instructing the jury as to

the measure of damages in failing to supply appliances according to the contract, that is, in general, very closely related to the one just disposed of. However, there were other items of damages which may have been recovered under the evidence under proper instructions, such as the increased cost of handling the logging operations on account of defaults of appellant, of which, notwithstanding the contention of respondent, we think there was sufficient evidence to go to the jury.

As to the question of the proper measure of damages being the rental value of such equipment as was necessary to be procured, above the rental value of such as was furnished, that depends a good deal upon the evidence introduced in the case. It is correct, however, to state that it is one's duty to use reasonable effort to minimize his loss, and under certain circumstances in this case it might be required of appellant that it should have rented other equipment in the place of that which was defective, and that it could have done so without undue expense, all of which is for the jury, if the evidence warrants. In *Florence Fish Co. v. Everett Packing Co., supra,* we so held, and held that, in that case, respondent was excused from procuring other equipment (an assisting boat in that case) because appellant had made repeated demands upon it, and at no time had it been refused the assisting boat, but the same had been often promised. Its conduct, therefore, was such as to mislead respondent, and the jury was warranted in finding that it was so misled. In *Cannon v. Oregon Moline Plow Co., supra,* there was no question in the case but that appellant's contract had been breached and that he had suffered damages, but it also appeared that he had stood supinely by and declined to procure the power necessary to carry on his farming operations when it could easily have been procured, and at a very reasonable cost. These are the elements

that must exist in order that respondent's contention may be maintained in this case, and we must leave that to the developments of the new trial.

The order granting a new trial is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.